ERIC VEILLEUX,

Plaintiff,

v.

PROGRESSIVE NORTHWESTERN
INSURANCE COMPANY et al.
Defendants.

No. 3:16-CV-02116 (MPS)

## RULING ON MOTION TO DISMISS

This case arises out of the plaintiff's suit against insurers to collect a judgment from two insureds. The plaintiff, Eric Veilleux, brought suit against the defendants, Progressive Insurance Company ("Progressive") and Nautilus Insurance Company ("Nautilus"), to collect on a stipulated judgment entered against Central Auto & Transport, LLC ("Central Auto") and Central Rigging & Transfer, LLC ("Central Rigging"). This Court previously approved a stipulation of dismissal with respect to the claims against Nautilus (*see* ECF No. 78; ECF No. 76); hence, Progressive is the lone remaining defendant. Veilleux's remaining claims against Progressive include the following: (i) a direct action under Conn. Gen. Stat. § 38a-321 against Progressive for the full amount of a $750,000 insurance policy provided to Central Auto (count one); (ii) a common law claim for the same amount advanced under the assignment of rights from Central Auto to Veilleux (count two); (iii) a common law claim for the same amount as a judgment creditor of Central Auto and or as a third party beneficiary of the policy between

1

Central Auto and Progressive (count three); (iv) a claim for breach of the implied covenant of good faith and fair dealing on the basis of Progressive's failure to honor Central Auto's policy (count four); (v) a direct action under Conn. Gen. Stat. § 38a-321 against Progressive for the full amount of a $1,000,000 insurance policy provided to Central Rigging (count five); (vi) a common law claim for the same amount advanced under the assignment of rights from Central Rigging to Veilleux (count six); and (vii) a claim for breach of the implied covenant of good faith and fair dealing on the basis of Progressive's failure to honor Central Rigging's policy (count seven). Progressive has filed a motion to dismiss counts two, three, four, six, and seven of the plaintiff's amended complaint. (ECF No. 21). For the following reasons, the motion to dismiss is hereby DENIED.

## I. Factual Allegations

Veilleux makes the following allegations, which I assume to be true.

Veilleux was an employee of G.D.S. Contracting Corp. ("G.D.S.") in Berlin, Connecticut, at the time of the events underlying this case. (ECF No. 17-1, Count 1, at ¶ 3).[1] On September 8, 2006, a tractor and trailer owned by Central Auto or Central Rigging[2] delivered an aerial lift to G.D.S. (*Id.* at ¶¶ 2-3; ECF No. 17-1 Count Five, at ¶¶ 2-3). "In the course of

---

[1] Since Veilleux includes all of his factual allegations in the counts set out in his complaint and restarts the numbering of his paragraphs with each count, I cite to his factual allegations using the particular count under which they fall.

[2] Veilleux alleges that the tractor and trailer was owned by Central Auto in his first count, (*see* ECF No. 17-1, Count 1, at ¶¶ 2-3), but avers that it was "registered with the Connecticut Department of Vehicles to Central Rigging" in his fifth count. (*See* ECF No. 17-1, Count 5, at ¶ 2). This apparent inconsistency does not undermine his claims at this stage, however, as he has the right to plead in the alternative. *See Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) ("[A] plaintiff may plead two or more statements of a claim, even within the same count, regardless of consistency."); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

unloading the aerial lift from the tractor, which involved the operation of both the tractor and the trailer by [driver Joseph Cunningham], [Veilleux] suffered severe, serious, and permanent personal injuries while in the bucket of the aerial lift." (ECF No. 17-1, Count 1, at ¶ 4). "On or about September 3, 2008, the Plaintiff filed suit in Hartford Superior Court . . . seeking recovery from [Central Auto and Central Rigging] for the severe, serious, and disabling injuries suffered by [Veilleux]. . . ." (*Id.* at ¶ 5; ECF No. 17-1, Count 5, at ¶ 6). On March 30, 2016, Veilleux entered into a stipulation with Central Auto and Central Rigging, "upon which judgment entered on said date, wherein [both companies] stipulated to liability for the injuries suffered by [Veilleux] as aforesaid, and to judgment in favor of [Veilleux] in the amount of Three Million Seven Hundred and Fifty Thousand Dollars ($3,750,000), plus costs." (ECF No. 17-1, Count One, at ¶ 6; ECF No. 17-1, Count Five, at ¶ 7).

At the time of Veilleux's injuries, Central Auto and Central Rigging were both insured for liability for such injuries by Progressive. Central Auto's policy, which covered the policy period of June 2, 2006 through June 2, 2007, provided for total coverage of up to seven hundred and fifty thousand dollars, along with the cost of defense. (*Id.* at ¶ 7). Central Rigging's policy, which covered the period from March 10, 2006 through March 10, 2007, provided for total coverage of up to one million dollars, along with the cost of defense. (ECF No. 17-1, Count Five, at ¶ 8). Despite these policies and despite having "an obligation to insure and defend [Central Auto and Central Rigging] in the cause of action brought by Veilleux," (ECF No. 17-1, Count One, at ¶ 10; ECF No. 17-1, Count Five, at ¶ 10), Progressive "neglected and/or refused to provide coverage to [both companies] for the aforesaid accident and injuries to [Veilleux] as aforesaid." (ECF No. 17-1, Count One, at ¶ 9; ECF No. 17-1, Count Five, at ¶ 9).

## II.     Legal Standard

"To survive a [Fed. R. Civ. P. 12(b)(6)] motion, the complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Morales v. Weiss*, 569 F. App'x 36, 37 (2d Cir. 2014), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For a complaint to survive a motion to dismiss, "[a]fter the court strips away conclusory allegations, there must remain sufficient well-pleaded factual allegations to nudge plaintiff's claims across the line from conceivable to plausible." *In re Fosamax Products Liab. Litig.*, No. 09-cv-1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010). When reviewing whether a complaint makes it across this line, a court must "draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

### III. Discussion

#### a. Counts Two, Three, and Six

Progressive claims that Veilleux's second, third, and sixth counts—all of which advance common law claims against it based on its failure to provide coverage to Central Auto and Central Rigging—must be dismissed because Conn. Gen. Stat. § 38a-321 provides the "sole basis upon which the plaintiff may pursue Progressive for satisfaction of all or part of the Stipulated Judgment entered into against [Central Auto and Central Rigging]." (*See* ECF No. 22 at 1). For the following reasons, I conclude that this argument contains no merit.

Conn. Gen. Stat. § 38a-321, otherwise known as the "direct action statute," *see Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 13 (D. Conn. 2013), provides in relevant part as follows:

> Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of

any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. . . .  Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death or damage to property, if the defendant in such action was insured against such loss or damage at the time when the right of action arose and if such judgment is not satisfied within thirty days after the date when it was rendered, such judgment creditor shall be subrogated to all the rights of the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

Conn. Gen. Stat. § 38a-321. A plaintiff must make three showings to set out a cause of action under this statute: "(1) that the plaintiff has recovered a final judgment; (2) that the judgment is against a person who was insured by the defendant against liability on it; and (3) that the judgment remains unsatisfied." *Tucker*, 936 F. Supp. 2d at 8, quoting *Skut v. Hartford Accident & Indemnity Co.*, 142 Conn. 388, 393 (1955).  If the judgment remains unsatisfied "for more than 30 days, the injured party is subrogated to the rights of the insured defendant and may proceed with the action to the same extent that the defendant could have enforced his claim against the insurer." *Id.*

There is nothing in the text of the direct action statute supporting Progressive's argument that it supplanted every common law claim that could otherwise be brought by parties against insurers to satisfy a judgment against an insured.  *Contrast, e.g.*, Conn. Gen. Stat. § 31-284 ("All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than rights and claims given by this chapter. . . .").  Thus, to interpret the statute in such a way would fly in the face of the Connecticut Supreme Court's repeated command that "[n]o statute is to be

construed as altering the common law, farther than its words import." *State v. Havican*, 213 Conn. 593, 598 (1990) (quoting *Dennis v. Shaw*, 137 Conn. 450, 452 (1951) (quoting *Shaw v. Railroad Co.*, 101 U.S. 557, 565 (1879)).

Progressive has not pointed to any precedent or legislative history that trumps this mandate. Instead, the gravamen of Progressive's argument that the direct action statute provides the exclusive vehicle for claims by a third party against an insurer to collect a judgment against an insured rests upon three quotes taken out of context from three cases. The first of these cases is *Black v. Goodwin, Loomis and Britton, Inc.*, 239 Conn. 144 (1996). *Black* concerned a suit by the administrator of an estate against an insurer for denying coverage to an insured that the administrator had sued for wrongful death; the administrator and the insured had stipulated to a judgment under which the insured assigned to the administrator any claims that it had against the insurer. *Id.*

After a jury found in favor of the administrator on all claims, the insurer challenged the verdict in part on the basis that a stipulated judgment is contrary to public policy. *Id.* at 152. In rejecting this argument, the Connecticut Supreme Court stated in a footnote that the fact that the insurance policy at issue was one for liability rather than indemnity was irrelevant inasmuch as the direct action statute provided a cause of action for both types of policies. *Id.* at 156, n. 13. The defendants rely upon a portion of this passage stating as follows: "We also note that the plaintiff's claim under [the direct action statute] does not depend on the assignment of rights under the stipulation because, under that statutory provision, the insurer is liable whether its contract is one of liability or indemnity." *Id.* at n. 13; (ECF No. 22 at 9). As the context set out above demonstrates, however, this passing remark cannot fairly be construed as proclaiming the direct action statute as the sole remedy for the administrator's claims. Indeed, the court did not

comment on the fact that the administrator had brought several common law claims in addition to its claim under the direct action statute against the insurer. *Id.* at 148-149 (noting that the administrator's complaint against the insurer consisted of "three common law claims, breach of contract, negligence and bad faith, and two statutory claims," including a violation of the direct action statute).

Progressive's reliance on *Peck v. Public Service Mut. Ins. Co.*, 114 F. Supp. 2d 51 (D. Conn. 2000), (*see* ECF No. 22 at 10), suffers from a similar flaw. *Peck* concerned in part a plaintiff's claim against an insurer for a judgment granted against an insured. *Id.* at 52-53. In the judgment, the insured assigned all of its rights against the insurer to the plaintiff. *Id.* at 53. The plaintiff thereafter asserted five state law claims against the insurer under the direct action statute and the assignment. *Id.* at 53. One of the defendant's arguments was that a non-assignment clause in the insurance policy proscribed the plaintiff from bringing a claim against it based upon the assignment. *Id.* at 55. In rejecting this argument, the district court noted that the assignment appeared to be "superfluous" given the "plaintiff's ability to bring [the] action pursuant to the direct action statute. . . ." *Id.* Progressive cites this as support for its contention, averring that this fleeting reference supports the proposition that "Connecticut courts have . . . found that an action on an assignment provision in the same case where a third party also brought a claim under [the direct action statute] was superfluous." (ECF No. 22 at 10 (internal quotation marks omitted)). Once again, however, the context above demonstrates that the district court made the statement at issue in reference to a matter separate from the purported exclusive

nature of the direct action statute—to wit, the defendant's argument that the non-assignment clause precluded the plaintiff's claim.[3]  As such, *Peck* proves unavailing to Progressive.

The final case that Progressive calls upon is *Tucker v. American Intern. Group, Inc.*, 936 F. Supp. 2d 11 (D. Conn. 2013).  Progressive emphasizes a quote from *Tucker* noting that "the Connecticut direct action statute has been interpreted as not only enumerating the elements of a cause of action, but also providing the 'basis upon which standing is conferred.'"  *Id.* (quoting *Gates v. Government Employees Ins. Co.*, No. CV65004852, 2008 WL 1971337, at *4 (Conn.Super.Ct. April 18, 2008)); (ECF No. 22 at 8; ECF No. 51 at 4-5).  This passage, Progressive contends, implies that the direct action statute provides the only basis for standing for a party's claim against an insurer based on a denial of coverage to an insured.  (*See* ECF No. 51 at 4; ECF No. 22 at 9).  The portion of *Tucker* that Progressive quotes, however, concerned an insurer defendant's contention that a plaintiff did not have standing to bring a claim under the direct action statute after the plaintiff entered into a stipulated settlement with the insured in return for an assignment of its rights against the insurer.  *Tucker*, 936 F. Supp. 2d at 8-9.  The district court rejected this argument, concluding that the plaintiff's "settlement releasing the insured in return for an assignment of its rights against the insurer" did not "create a 'satisfied' judgment that would bar recovery under the direct action statute."  *Id.* at 13.  Hence, the district court's statement that the direct action statute provides a basis upon which standing is conferred did not imply that it provides the *only* basis upon which standing is conferred.  Rather, it rebutted

---

    [3]  It is also noteworthy that *Peck* specifically reserved judgment on the question of whether the direct action statute provided the only proper vehicle for the plaintiff's claims against the insurer.  *See Peck*, 114 F. Supp. 2d at 54 ("Thus, the question before us is not whether the direct action statute was the only 'proper' means for plaintiff to assert a claim against [the insurer] but, rather, whether plaintiff may assert . . . "extracontractual" claims (as defendant characterizes them) in an action under the direct action statute.").

the defendant's contention that the plaintiff lacked standing at all.  Thus, *Tucker*, like *Black* and *Peck*, does not support Progressive's argument. [4]

I therefore deny Progressive's motion to dismiss with respect to Veilleux's second, third, and sixth counts.

### b.      Counts Four and Seven

Progressive contends that counts four and seven of Veilleux's amended complaint, both of which allege claims for a breach of the implied covenant of good faith and fair dealing, must be dismissed due to their failure to allege bad faith.  (ECF No. 22 at 10).  "[T]he duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship." *Nwachukwu v. Liberty Bank*, 257 F. Supp. 3d 280, 295 (D. Conn. 2017) (quoting *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004)).  This duty "requir[es] that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Id.*  To set out "a cognizable claim of breach of the implied covenant

---

[4] In its reply brief, Progressive points also to a Connecticut Superior Court case from 2002 noting that "[t]he direct action statute is the exclusive remedy to determine the obligation to pay between an injured plaintiff and the defendant's insurance carrier." *Ducharme v. Gaines*, No. CV0200816516, 2002 WL 31942306, at *3 (Conn. Super. Ct. Dec. 20, 2002); (ECF No. 51 at 2).  As with Progressive's other proffered case law, however, the context of the court's statement establishes it to be inapposite.  *Ducharme* concerned an insurer's motion to intervene in an ongoing suit between an insured and an injured party to request a declaratory judgment that it did not have a duty to indemnify or defend the insured.  *Id.* at *1.  The court rejected this motion, noting that allowing such an action would constitute an end run around the direct action statute's requirement that a "final judgment" enter before an injured person could bring a direct action against an insurer.  *Id.* at 3.  The court, relying upon a Connecticut Supreme Court case denying a declaratory judgment in a similar situation, *see Hartford Acc. & Indem. Co. v. Williamson*, 153 Conn. 345, 349 (1966) (denying a declaratory judgment stating an insurer's obligation to cover an insured facing suit given that the remedy of the direct action statute would be available to the insurer if and when a judgment entered against the insured), concluded that the rights accorded to the insurer under the direct action statute provided the sole remedy for it in the event that the insured later brought suit against the insurer under that statute.  *Id.* at 3.  The court did not opine on whether the direct action statute provided the sole cause of action for the plaintiff to pursue such a claim.  As such, the case is inapposite here.

of good faith and fair dealing, [the plaintiff must allege that] 'the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract [were] taken in bad faith.'" *Calhoun v. Providence Mut. Fire Ins. Co.*, 204 F. Supp. 3d 436, 442 (D. Conn. 2016) (quoting *De La Concha of Hartford, Inc.*, 269 Conn. at 433). Bad faith encompasses "both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 224 Conn. 231, 237 (1992), quoting Black's Law dictionary (5[th] ed. 1979). In essence, then, "[bad] faith means more than mere negligence, it involves a dishonest purpose." *De La Concha of Hartford, Inc.*, 269 Conn. at 433. Although an insurer's "failure to conduct an adequate investigation of a claim, when accompanied by other evidence, reflecting an improper motive, properly may be considered as evidence of bad faith," *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014), "[a]llegations of a mere coverage dispute or negligence by an insurer in conducting an investigation will not state a claim for bad faith against an insurer." *Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002).

The Fourth Count of Veilleux's complaint alleges the following:

> In denying coverage to Central Auto, in [Veilleux's] prior lawsuit, [Progressive] acted in bad faith, and intentionally, willfully, and/or with reckless disregard and/or in derogation of the rights of Central Auto and [Veilleux] under the above-referenced insurance policy, in that, in addition to denying coverage as to Central Auto as the owner of the tractor and trailer, [Progressive] denied coverage under the motor carrier endorsement, which is considered a suretyship by the insurance carrier to protect the public, and in derogation of the terms or and/or public policy behind the Federal Motor Carrier Safety Act, and there was no colorable basis on which to deny coverage under said endorsement.

(ECF No. 17-1, Count Four, ¶ 11). While this language is somewhat sparse, it does allege that Progressive denied coverage despite a clear mandate to do so under the Federal Motor Carrier Safety Act. This allegation, liberally construed, states a claim against Progressive for refusing to

honor the policy despite the fact that the company knew or should have known of its obligation to provide such coverage; such an action could constitute bad faith. *See Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014) (denying motion to dismiss claim for breach of the covenant of good faith and fair dealing against insurer in part because plaintiff had alleged that insurer denied coverage in knowing disregard of its obligations under the policy); *contrast Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002) (dismissing claim for breach of covenant of good faith and fair dealing because plaintiff "never specif[ied] how or in what manner defendant's denial of coverage . . . was unreasonable, outrageous, malicious and done in bad faith"). Thus, in averring that Progressive failed to live up to its obligations despite lacking any "colorable basis" for so doing, Veilleux just barely "nudge[s] [his] claim[] across the line from conceivable to plausible*." In re Fosamax Products Liab. Litig.*, No. 09-cv-1412, 2010 WL 1654156, at *1 (S.D.N.Y. Apr. 9, 2010).

> Veilleux's seventh count alleges as follows:

> In denying coverage to Central rigging, in [Veilleux's] prior lawsuit, [Progressive] acted in bad faith, and intentionally, willfully, and/or with reckless disregard and/or in derogation of the rights of Central Auto and [Veilleux] under the above-referenced insurance policy, in that, in addition to denying coverage as to Central Rigging as the registrant of the tractor, [Progressive] denied coverage on the basis that: (a) there was no evidence that the tractor was used in the business of Central Rigging, when the name "Central Rigging" is painted on the side of the tractor, and the tractor is registered to Central Rigging; (b) that Central Auto & Transport, LLC, and Central Rigging were essentially owned by the same individual, Robert Greco, which is not a basis for denying coverage; and (c) that there was no evidence that the tractor was hired, rented, or borrowed by Central Rigging from Central Auto.

(ECF No. 17-1, Count Seven, at ¶ 11). Here, Veilleux alleges that Progressive denied coverage on a pretextual basis, which would constitute bad faith. *See Courteau v. Teachers Ins. Co.*, 243 F. Supp. 3d 215, 219 (D. Conn. 2017) (insurer's denial of claim on a pretextual basis was evidence of intentional act to mislead plaintiffs, thereby constituting bad faith); *Gabriel v.*

*Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01435-VAB, 2015 WL 5684063, at *5 (D. Conn. Sept. 28, 2015) (denying motion to dismiss claim of breach of implied covenant of good faith and fair dealing because plaintiffs' allegations gave "rise to a plausible inference that [insurer] acted to mislead [plaintiffs]"); *Cyr v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-085, 2017 WL 1053839, at *3 (D. Conn. Mar. 20, 2017) (plaintiffs alleged plausible claim of bad faith in part by alleging that insurer "attempted to exploit [plaintiffs'] lack of sophistication by denying coverage on" an inapplicable basis).

I therefore deny Progressive's motion to dismiss with respect to Veilleux's fourth and seventh counts.

### IV.    Conclusion

For the reasons discussed above, Progressive's motion to dismiss (ECF No. 21) is hereby DENIED.

.

IT IS SO ORDERED.

___/s/_____

Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut

                January 18, 2018